Jasen, J.
(dissenting). The majority today holds that the State of New York is without power to prohibit the dissemination of films depicting children of tender years engaging in actual or simulated sexual intercourse, sodomy, sexual bestiality, masturbation, sado-masochistic abuse or lewd exhibition of the genitals unless the child’s “performance” is determined to be legally obscene. The majority has apparently taken the view that the State’s interest in preventing the severe emotional and psychological damage to our children which will result from this base and degrading sexual exploitation is outweighed by the First Amendment right of “expression” of those who promote the distribution of such sexually exploitative material. I cannot agree.
In recent years,, there has been a growing public awareness of the increased use of young children in poronographic and sexually exploitive material.[1] Outraged by this abuse *682 of our children, the Legislature enacted section 263.15 of the Penal Law, among others, to eliminate this exploitation of our children and to curb this burgeoning industry.* [2] The statute states: “A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than sixteen years of age.” Another statute defines “sexual conduct” as “actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals” and defines “performance” as any “play, motion picture, photograph or dance” or “any other visual representation exhibited before an audience.” (Penal Law, § 263.00, subds 3, 4.) Section 263.15 makes illegal the dissemination, sale or other “promotion” of such sexual “performances” by children whether the performance is obscene or hot.
Unlike an obscenity statute, section 263.15 is not concerned with the effect of this sexually exploitive material upon the community. Instead, it is primarily concerned with the effect which the depicted conduct has on the children involved.[3] It seeks to inhibit the maintenance of a market which fills the commercial coffers of those who sexu *683 ally abuse and commercially exploit our children and prohibits conduct — the promotion of sexual performances— which effectively maintains that market.
While it may be conceded that this statute acts to limit the First Amendment rights of promoters of such sexually exploitive material, in my view, this narrow infringement upon the freedom of expression of purveyors of such material is amply justified by the compelling interest of the State in preventing a practice which encourages and, indeed, financially underwrites the sexual abuse and exploitation of our children.
It has long been recognized by the Supreme Court of the United States that the right to freedom of expression embodied in the First Amendment to the Constitution is not absolute. Restraints upon the mode of expression (United States v O’Brien, 391 US 367), the time, place and manner of expression (Adderly v Florida, 385 US 39; Cox v Louisiana, 379 US 559; Kovacs v Cooper, 336 US 77) and indeed, even on the substantive content of the expression itself (see, e.g., Roth v United States, 354 US 476; Chaplinsky v New Hampshire, 315 US 568; Schenck v United States, 249 US 47), have been found to be constitutionally permissible in certain circumstances. The governmental interest which must be shown to justify a particular restraint varies according to the type of restraint imposed.
Time, place or manner restrictions, for example, may be justified upon a showing that such regulations serve a “significant governmental interest and leave ample alternative channels for communication.” (Consolidated Edison v Public Serv. Comm., 447 US 530, 535.) Restrictions upon the *684 mode of expression, on the other hand, are subject to a slightly different standard. Where expressive conduct contains both “speech” and “non-speech” elements, the governmental interest in the regulation of the “non-speech” component of the conduct can justify incidental limitations on the actor’s freedom of speech. The governmental interest required for this sort of modal limitation is a “substantial governmental interest” which is “unrelated to the suppression of free expression.” (United States v O’Brien, 391 US 367, 376-377, supra.) The strictest standard is applied to content-based restrictions. (First Nat. Bank of Boston v Bellotti, 435 US 765, 786.) Where such restrictions are placed upon the speech of private persons, “the state action may be sustained only if the government can show that the regulation is a precisely drawn means of serving a compelling state interest.” (Consolidated Edison v Public Serv. Comm., 447 US 530, 540, supra.) Thus, in order to determine whether a particular restraint is permissible, we must first examine the nature of the restraint and then determine whether a sufficient governmental interest justifying the limitation of freedom of expression has been demonstrated.
The restraint upon freedom of expression imposed by section 263.15 of the Penal Law is quite limited. The statute does not restrict in any manner frank discussion of the issue of teen-age sexuality or any other issue. It does not purport to limit what may be said or what ideas may be expressed. Instead, it limits only the mode of expression, by requiring that the bodies of our children not be used in expressing one’s ideas, and effectuates this requirement by proscribing the sale of films which depict children of tender years engaging in certain sexual acts.[4]
This limitation on the speaker’s mode of expression, as noted earlier, is justified if “it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the further *685 anee of that interest.” (United States v O’Brien, 391 US 367, 377, swpra; see, also, Giboney v Empire Stor. Co., 336 US 490.) In my opinion, the People have adequately demonstrated that this standard has been met.
There can be no question that the State’s interest in the protection of the psychological and emotional welfare of children is substantial and unrelated to the suppression of free expression. The State’s overriding interest in the welfare of children has been recognized in many contexts and is often relied upon by the Legislature to protect children from their own inexperience or as a basis for denying adults rights which they might otherwise have because the exercise of those rights might cause harm to children. For example, the child labor laws restrict the ability of adults to engage children in Certain occupations (Labor Law, §§ 130-133) or to employ them at certain times (Labor Law, §§170-173; see, also, Education Law, § 3215 et seq.; § 3228 et seq.). We limit the applicability of contract law in relation to infants (Casey v Rastel, 237 NY 305; Restatement, Contracts 2d, § 18 B) and soften the impact of the criminal law upon them (Penal Law, § 30.00; CPL art 720; Family Ct Act, art 7). The law restricts a child’s right to marry (Domestic Relations Law, § 15-a). We restrict a child’s ability to drive a car (Vehicle and Traffic Law, § 502, subd 2). All this we do to protect our children. The well-being of children is a subject long recognized as within a State’s constitutional power to regulate.
Nor is it a novel proposition that the rights protected by the First Amendment should be restricted when the exercise of those rights might endanger the welfare of a child. In Prince v Massachusetts (321 US 158), the United States Supreme Court held that a statute prohibiting use of a child to distribute literature on the street was valid notwithstanding the statute’s infringement on First Amendment freedoms. Also, in Ginsberg v New York (390 US 629), a proscription against the distribution of nonobscene literature to children was upheld. (See, also, FCC v Pacifica Foundation, 438 US 726.) It would seem clear that the State’s interest in the prevention of abuse of children in the creation of sexually exploitive literature involving children *686 is at least as compelling as the interest in preventing them from reading it.
It is argued, however, that section 263.15 of the Penal Law cannot achieve that end, for it is not directed at the creators but, rather, at the promoters of such material. I disagree. The creators of such material can only practice their “craft” so long as a market is maintained for their end product. The proscription embodied in section 263.15 is an attempt to prevent the maintenance of such a market. The Legislature has apparently taken the view that no more narrowly drafted statute will achieve an adequate level of protection for our children, and that a proscription of the promotion of such sexually exploitive material involving children is essential.[5]1 am persuaded that this conclusion is correct and that the prohibition on promotion of such material causes an incidental restriction on alleged First Amendment freedoms which is no greater than is essential to the furtherance of the State’s compelling interest in preventing the use of children in sexually exploitive material.
Moreover, even if I were to agree that section 263.15 is a “content-based” restriction, I would still conclude that the statute is constitutional. The most priceless possessions we have in this Nation are our children. It seems to me that the State’s interest in protecting children is so compelling that even a direct restraint would be permissible. In my opinion, there is a “clear and present danger” that the promotion of a “sexual performance” by a child will bring about the substantive evil — child abuse — which the Legislature has a right to prevent. (Schenck v United States, 249 US 47, 52, supra.)
Further, I cannot agree with the majority’s conclusion *687 that the statute is unconstitutionally overbroad. It is argued that the wording of the statute is so broad that it brings within its proscriptive scope medical and scientific journals, news documentaries and other socially beneficial literature. In my opinion, however, the statute need not be read so broadly. It is aimed at the commercial sexual exploitation of our youth and can be narrowly construed by this court to reach only such sexually exploitive material. Since the statute is subject to a narrowing construction, it should not be struck down as overboard on its face. As the United States Supreme Court has stated: “[T]he plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech’ toward conduct and that conduct — even if expressive — falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect —at best a prediction — cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.” (Broadrick v Oklahoma, 413 US 601, 615.) It seems to me that the potential for infringement upon legitimate speech inherent in the proscription embodied in section 263.15 of the Penal Law is quite small and can adequately be addressed by this court when the need arises. Hence, I would not hold the statute to be unconstitutionally overbroad.
Nor do I agree that the statute is fatally "underinclusive” as the majority suggests. The Legislature need not prohibit the promotion of all products of illegal child labor in order to prohibit any. (Erznoznik v City of Jacksonville, 422 US 205, 215.) While it is true that the presumption of statutory validity has less force where a content-based classification is involved, such a classification can be upheld where “there are clear reasons for the distinctions.” (Id.) The very real danger of severe psychological and emotional *688 injury which will result from the maintenance of a market for sexually exploitive material involving children is such a “clear reason”. Moreover, as I have previously noted, in my opinion the statute does not prohibit the expression of any particular idea or message and is not a content-based restriction.
Finally, the majority suggests, without citation of authority, that the potential extraterritorial effect of the statute somehow renders it invalid.[6] To be sure, there is authority for the proposition that one State may not prohibit a citizen of a sister State from disseminating information about activity which is legal in the sister State. (Bigelow v Virginia, 421 US 809, 824-825.) However, this is not the effect of section 263.15 of the Penal Law. Much more than the dissemination of information is involved. The conduct prohibited causes a market for sexually ex-ploitive material involving children to be maintained in New York. The maintenance of this market leaves open the financial conduit by which the production of such material is funded and materially increases the risk that New York children will be injured. In short, the production of such material outside New York for sale here causes harm in New York and is, therefore, subject to the police power of the State of New York at least insofar as that power operates upon the promotion of such material here. (Cf. Strassheim v Daily, 221 US 280, 285; Hyde v United States, 225 US 347, 362-363; see, also, Skiriotes v Florida, 313 US 69, 74-76; Ford v United States, 273 US 593, 620-624.)
Accordingly, for all of the above reasons, I would affirm the order of the Appellate Division and uphold the constitutionality of section 263.15 of the Penal Law.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchsberg and Meyer concur in Per Curiam opinion; Judge Jasen dissents and votes to affirm in a separate opinion in which Judge Gabrielli concurs.
Order revsered, etc.

. The subject has received much attention in the media. (“60 Minutes”, Vol IX, No. 33, a broadcast on the CBS Television Network entitled “Kiddie Porn”, May 15, 1977, as reprinted in Protection of Children Against Sexual *682 Exploitation, Hearings before the Subcomm to Investigate Juvenile Delinquency of the Senate Comm on the Judiciary, 95th Cong, 1st Sess, at p 123; Chicago Tribune [a series of articles], May 15,1977, at p 1, col 1; May 16, 1977, at p 1, col 1; May 17, 1977, at p 1, col 1, reprinted in Sexual Exploitation of Children, Hearings Before the Subcomm on Crime of the House Comm on the Judiciary, 95th Cong, 1st Sess, at pp 428-442; Child’s Garden of Perversity, Time, April 4, 1977, at p 55; see Protection of Children From Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U of Mich J of L Reform 295.) I note also that the characterization of such material as “pornographic” does not necessarily imply that it is “legally obscene”. While it is fair to say that most obscene material is pornographic, the converse is not necessarily true, for a given performance’s “obscenity” in a legal sense depends upon the standards of the community in which it finds itself.

. One researcher, Robin Lloyd, in his book For Love or Money: Boy Prostitution in America, has documented the existence of over 260 so-called “boy” and “girl” magazines, with titles such as “Torrid Tots”, “Night Boys”, “Lolita”, “Boys Who Love Boys”, and “Children Love”. (Lloyd, For Love or Money: Boy Prostitution in America, at p 226; see Senate Comm on the Judiciary, Protection of Children Against Sexual Exploitation Act of 1977, S Rep No. 95-438, 95th Cong, 1st Sess, at pp 5-6; see, also, Free Speech and Self-Incrimination: The Constitutionality of California’s New Child Poronography Laws, 10 Pacific L J 119.)

. The Legislature set forth its intent in section 1 of chapter 910 of the Laws of 1977, as follows:
“Section 1. Legislative declaration. The legislature finds that there has been a proliferation of exploitation of children as subjects in sexual performances. The care of children is a sacred trust and should not be abused by those who seek to profit through a commercial network based upon the exploitation of children. The public policy of the state demands the protection of children from exploitation through sexual performances.
“The legislature further finds that the sale of these movies, magazines and photographs depicting the sexual conduct of children to be so abhorrent to the fabric of our society that it urges law enforcement officers to aggressively seek out and prosecute both the peddlers of children and the promoters of this filth by vigorously applying the sanctions contained in this act.”

. It is noteworthy also that the statute does not prohibit the depiction of nudity per se, even when the body of a child is depicted. Instead, it prohibits only depiction of children engaging in certain sexual acts including lewd exhibition of the genitals.

. The commercial revenue which the promoters of this sexual exploitation of our children derive from their activities is staggering. (Senate Comm on the Judiciary, Protection of Children Against Sexual Exploitation Act of 1977, S Rep No. 95-438, 95th Cong, 1st Sess, at p 6; see, also, Pope, Child Pornography: A New Role for the Obscenity Doctrine, 1978 U of 111 L Forum, 711, 713-716; Comment, Preying on Playgrounds: The Sexploitation of Children in Pornography and Prostitution, 5 Pepperdine L Rev 809, 812-814.) Given the tremendous profit potential inherent in the production of such material, it is quite reasonable to assume that the production of such material will not abate until the market which underwrites it is eradicated.

. I note that defendant did not assert that the statute was invalid due to its extraterritorial effect. Thus, he has failed to preserve this issue and we need not reach it on this appeal. I address this unpreserved issue only because the majority has chosen to premise its reversal in part upon this ground.